IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

KUTITE, LLC, and
MOHAMMED Z. KUTITE,

      Plaintiffs,

v.                                           Case 2:13-cv-02106-JTF-cgc

EXCELL PETROLEUM, LLC,
MAJORS MANAGEMENT, LLC,
and EAST SHELBY DRIVE 3796
CENTER, LLC,

      Defendants.

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants Excell Petroleum, LLC ("Excell"), Majors Management, LLC ("Majors Management"), and East Shelby Drive 3796 Center, LLC's ("East Shelby Drive Center") Motion to Dismiss. (Docket Entry "D.E." #3). The instant motion was referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #8). For the reasons set forth herein, it is recommended that Defendants' Motion to Dismiss be DENIED.

**I. Background**

On February 8, 2013, Plaintiffs Mohammed Z. Kutite and Kutite, LLC filed a Complaint for Injunctive Relief and Money Damages in the Chancery Court of Shelby County, Tennessee for the Thirtieth Judicial District in Memphis. (D.E. #1, Exh. A).[1] On February 19, 2013, Defendants filed

---

[1] Plaintiffs have attached to the Complaint the documents pertaining to the original lease and the assignment, including as follows: Assignment of Agreements (Compl., Exh. A), the

1

a Notice of Removal to this Court. (D.E. #1).

The allegations in Plaintiff's Complaint arise from their purchase of an Exxon Hop In gas station and store ("Store") located at 3796 East Shelby Drive in Memphis, Tennessee. (Compl. ¶ 6). Plaintiffs allege that they were assigned the Lease Agreement and Supply Contract from Azel Investment Group, Inc., Altared Dahan Mahmoodnaji, and Mutahar Muhammed Sharhan (collectively "Assignors") (Compl. ¶ 7). The Lease Agreement contains the following provision:

> This Lease shall be construed under and enforced in accordance with the laws of the State of Georgia. This Lease shall inure to the benefit of and be enforceable by Landlord and its successors and assigns, and shall be enforceable against and binding upon Tenant and Tenant's heirs, representatives, successors, and assigns. Venue for any action to enforce this Lease shall be brought only in the appropriate state court in Gwinett County, Georgia.

(Compl., Exh. C ¶ 31). The Supply Contract provides that it "shall be interpreted and enforced under the laws of the State of Georgia" but does not address venue. (Compl., Exh. E ¶ 21).

The Assignment of Agreements states that it was "entered into" on September 21, 2012 and "made effective as of" October 1, 2012 between Assignors, Plaintiffs, East Shelby Drive Center, which is designated as the landlord, and Excell, which is designated as the supplier. (Compl., Exh. A at 1). The Amendment to Memorandum of Agreement was "entered into" on September 21, 2012, was "executed" on September 28, 2012, and was "effective as of" October 1, 2012. (Compl., Exh. B). The Assignment of Agreements does not address venue but provides that the "Assignment has been made, executed and delivered in the State of Georgia and the terms and provisions of this

---

Amendment to Memorandum of Agreement (Compl., Exh. B), the Commercial Real Estate Lease Agreement (Compl., Exh. C) ("Lease Agreement"), the First Amendment to Commercial Lease (Compl., Exh. D), and the Contract Supply Agreement (Compl. Exh. E) ("Supply Contract"). Plaintiffs additionally attached other exhibits regarding their negotiations to purchase the store, as discussed below.

Assignment shall be construed and interpreted in accordance with the laws of the State of Georgia without reference to its principles of conflicts of laws." (Compl., Exh. A ¶ 11).

Plaintiff alleges that these documents were "drafted by Defendants' attorneys and sent to Plaintiffs by email to be signed by Plaintiffs and Assignors." (Compl. ¶ 8 & Exh. F).[2] Plaintiff state that they and Assignors executed the documents and returned them. (Compl. ¶ 9). A September 27, 2012 email from Majors Managements informed Plaintiff that, once signed by Scott Moon, they and Assignors would be sent "a copy of the Assignment of Agreements." (Compl., Exh. F). However, the Assignment of Agreements and the Amendment to Memorandum of Agreement filed with the Court by Plaintiffs has been signed by Assignors and Plaintiffs but not by East Shelby Drive Center or Excell, and there are blank spaces for Scott A. Moon, Manager, to sign for East Shelby Drive Center and Excell. (Compl., Exh. A).

After they signed and returned the documents regarding the assignment, Plaintiffs allege that they "paid Assignors $50,000 in September 2012 for the good will value of the Store" and "executed a $33,575.00 promissory note for the inventory and stock in the Store." (Compl. ¶ 10). Plaintiffs state that they did so in "reliance upon representations" from Major Management's legal department. (*Id.*)

On October 2, 2012, Plaintiffs received an email from Majors Management stating that there was "one additional document" that needed to be executed before the landlord could sign the assignment, Plaintiff could be provided with a copy, and the assignment would be "complete." (Compl., Exh. L). Plaintiff alleges that he interpreted this notice as stating that "Defendants would

---

[2] In another portion of the Complaint, Plaintiffs state that the documents were drafted by Major Management's legal department. (Compl. ¶ 10).

attempt to require Plaintiffs to enter into a contract with Defendants' ATM vendor." (Compl. ¶ 14). However, Plaintiffs state that "there was no requirement under the Lease Agreement, Supply Agreement, or any other agreement that Plaintiffs use Defendants' ATM vendor." (Compl. ¶ 15).

Plaintiffs allege that, also in "reliance upon representations" from Major Management's legal department, they "paid Assignors $55,601.95 on October 8, 2012" for gasoline and diesel fuel. (Compl. ¶ 10). In total, Plaintiffs allege that they paid "$139,176.95 to Assignors for the Store." (*Id.*). Also as of the "operative date of the assignment," Plaintiffs allege that they began paying rent to East Shelby Drive Center as landlord and purchasing fuel from Excell as supplier. (Compl. ¶ 12). Plaintiffs aver that, from October to December, 2012, they purchased $475,685.92 in gasoline from Excell. (*Id.* & Exh. J).

On October 15, 2012, Plaintiffs allege that they executed an Equipment Finance Lease Agreement with Azura Leasing for an ATM to be placed in the Store ("Azura ATM Lease") (Compl. ¶ 11 & Exh. I). Plaintiffs allege that the minimum term of the Azura ATM Lease is forty-eight months and that it cannot be cancelled during the terms of the lease except within three business days of its execution as provided in the notice of cancellation form. (Compl. ¶ 11 & Exh. F at 1, 2 ¶ 4, & 5). Plaintiffs allege that they entered into the Azura ATM Lease in "further reliance upon the agreements." (Compl. ¶ 11). Plaintiffs allege that they desired to enter into the Azura ATM lease rather than the TN Management ATM lease because it would allow them to "share the revenue" and increase their revenue by $1,000 to $1,500 per month. (Compl. ¶ 18). Plaintiffs further allege that they attain most of their profits from the sale of goods and the ATM revenue instead of from the sale of gasoline, which generates "only one or two cents per gallon." (*Id.*) Thus, Plaintiffs state that they "would not have purchased the Store from the Assignors for nearly $140,000 had any of the

contracts required Plaintiffs to use the TN Management ATM to which Plaintiffs would receive no revenue." (*Id.*).

Plaintiffs allege that, on November 8, 2012, they were again informed that they were required to use Defendants' ATM vendor, TN Management Group, LLC. (Compl. ¶ 13 & Exh. F). Specifically, Plaintiffs were told that Majors Management had Plaintiffs' "signed documents" but that they were put on "hold" until they received the "signed ATM agreement." (Compl., Exh. F).

Plaintiffs aver that Defendants "then began taking coercive action against Plaintiffs to force Plaintiffs into breaching the Azura ATM Lease and to force Plaintiffs into executing the TN Management ATM Agreement." (Compl. ¶ 17). Plaintiffs allege that Defendants committed four specific coercive and unlawful acts. (*Id.*).

First, Plaintiffs allege that Defendants required them to pay approximately $2,000 per month in common area maintenance ("CAM") charges. (Compl. ¶ 17(a)). Plaintiffs state that, while the Lease Agreement originally stated that they would be charged monthly rent "plus CAMIT," that the "plus CAMIT" language "is crossed through and initialed." (*Id.* & Exh. C at 1). Plaintiff alleges that the parties have "operated as if no CAM charges were required under the Lease Agreement . . . because Plaintiffs have paid for all of the maintenance on the Store since October 1, 2012" and "Defendants have performed no maintenance on Plaintiffs' Store." (Compl. ¶ 17).

Second, Plaintiffs allege that Defendants "began intentionally supplying more gasoline" to the Store than Plaintiffs required, which resulted in an overdraft charge of $1,000.00 for each transaction where Plaintiff had insufficient funds. (Compl. ¶ 17(b)). Plaintiffs state that they had been assessed approximately $7,500.00 in such penalties. (*Id.*). Plaintiffs allege that "there is no requirement for the payment of any insufficient funds fee to Defendants in the Supply Contract or

any other contract." (*Id.*). However, Plaintiffs allege that, when they were unable to pay the extra penalties, Excell "placed a hold on any further gasoline being supplied to Plaintiffs' Store." (*Id.*). Plaintiffs state that the lack of gasoline "has decreased the customer traffic in the Store to almost zero," which also critically impacts the sale of goods and services from the Store, including the ATM service. (*Id.*).

Third, Plaintiffs allege that Defendants have added a "freight charge per gallon to Plaintiffs' fuel invoices of approximately 4 to 5 cents per gallon, which causes the fuel prices to be correspondingly higher than other vendors would be charging for the same type of fuel." (Compl. ¶ 17(c)). Plaintiffs allege that there is "no provision in the Supply Contract for the foregoing freight charge, and according to the industry standard, the freight charge would not be expected from a purchaser under the Supply Contract." (Compl. ¶ 17(c)).

Fourth, Plaintiffs allege, upon information and belief, that Defendants "are in negotiations with another potential purchaser of the Store." (Compl. ¶ 17(d)). Plaintiffs allege that Defendants are "threatening Plaintiffs with default under the Lease Agreement so that Plaintiffs will be forced to vacate the Store." (*Id.*). Plaintiffs state that, if Defendants are successful, Plaintiffs would "lose their entire investment capital because of Defendants' unlawful actions." (*Id.*).

Ultimately, Plaintiffs' Complaint asks the Court to "hold that Defendants are bound by the Assignment of the Lease Agreement and Supply Contract to Plaintiffs and enforce the terms of the Lease Agreement and Supply Contract between Plaintiffs and Defendants." (Compl. ¶¶20-31, Counts I-III). Plaintiffs Complaint additionally alleges the following causes of action: tortious interference with contract (Compl. ¶¶ 32-36, Count IV); inducement or procurement of breach of contract in violation of Tennessee Code Annotated Section 47-50-109 (Compl. ¶¶ 37-42, Count V);

6

breach of contract (Compl. ¶¶ 43-45, Count VI); breach of the duty of good faith and fair dealing in violation of Tennessee Code Annotated Section 47-1-304 (Compl. at 12, Count VII); and, usury in violation of Tennessee Code Annotated Section 47-14-103(3) (Compl. at 13, Count IX).[3] Finally, Plaintiffs allege that Defendants violated "equitable principles" that apply to contracts and that they should be "enjoined to act equitably towards Plaintiffs in performance of the Lease Agreement and Supply Contract." (Compl at 13., Count VIII).

## II. Proposed Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In addressing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the

---

[3] Plaintiff's Complaint contain misnumbering, both in the count and in the paragraphs. As to the counts, Plaintiff states in his Response to Motion to Dismiss that there are two counts labeled mistakenly labeled "Count VI." The Court will refer to these counts by roman numerals as if they had been properly labeled. As to the paragraphs, the Court will simply refer to the page number for Counts VI through IX to avoid confusion.

. . . .claim is and the grounds upon which it rests." *Id.* (citing *Twombly*, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678-79.

**III. Proposed Conclusions of Law**

Defendants' Motion to Dismiss argues that Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6), the *forum non conveniens* doctrine, and 28 U.S.C. Section 1406(a) based upon the forum selection clause in the Lease Agreement. The Sixth Circuit has not explicitly stated which subsection of Rule 12(b) applies to motions to dismiss cases removed from state court based upon a forum selection clause. *J. D. May v. Ticketmaster Entertainment, LLC*, No. 3:10-cv-00760, 2010 WL 4024257, at *3 (M.D. Tenn. Oct. 13, 2010). However, based upon the guidance from the Sixth Circuit, it appears that a "motion to dismiss to enforce the clause may be premised either on Rule 12(b)(6) or on the *forum non conveniens* doctrine." *Id.* at *4.

    *A. Rule 12(b)(6)*

"On a Rule 12(b)(6) motion, the court only needs to determine whether the forum selection clause is enforceable and applicable; if it is, then the suit should be dismissed." *May,* 2010 WL 402457, at *4 (M.D.Tenn. Oct. 13, 2010) (citing *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 366 (6th Cir. 2008); *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375-76 (6th

Cir. 1999)). The enforceability of a forum selection clause in a diversity suit is governed by federal law, and a clause should be upheld "absent a strong showing that the clause should not be applied." *May*, 2010 WL 4024257, at *4 (citing *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009); *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991)). In determining the enforceability of a forum selection clause under federal law, a court should consider the following: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would effectively or unfairly handle the suit; and, (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. *Wong*, 589 F.3d at 828 (citing *Sec. Watch*, 176 F.3d at 375).

However, while these courts were able to begin their analyses with the enforceability of a forum selection clause under federal law, this Court must consider whether a threshold question in this case—namely, whether there is a valid and enforceable contract between Defendants and Plaintiffs that would even arguably render the forum selection clause enforceable. The question of whether a valid contract was formed is generally determined by state law. It appears that the parties intended that, if a contract were going to be formed, it would be formed under the laws of the state of Georgia, as the Lease Agreement, Supply Contract, and Assignment of Assignments all set forth that any contract that were formed would be enforced, construed, and interpreted under Georgia law. Under Georgia law, a "meeting fo the minds is the first requirement of law relative to contracts." *Auto-Owners Ins. Co. v. Crawford*, 525 S.E.2d 118, 120 (Ga. Ct. App. 1999). Without a meeting of the minds, "a valid and binding contract has not been formed." *Id.*

While it is alleged that the parties were in negotiations for Plaintiffs to purchase the Store by assignment of the Lease Agreement, even viewing the facts in the light most favorable to

9

Plaintiffs, Plaintiffs have alleged that only they and Assignors signed the contract but that Defendants withheld signing it due to Plaintiffs' refusal to complete the TN Management ATM Agreement. Thus, Plaintiff's exhibits further demonstrate that there was not a "meeting of the minds" regarding the assignment. First, on September 27, 2012, Plaintiffs were told that they and Assignors would receive a copy of the Assignment of Assignments once it had been signed. (Compl., Exh. F). After Plaintiffs and Assignors signed their documents but before Defendants signed them, Plaintiffs were notified on October 2, 2012 that they must also execute the TN Management ATM Agreement before Defendants would sign the documents. (Compl., Exh. L). On November 8, 2012, Plaintiffs were again informed that the execution of the documents was on "hold" because Plaintiffs had not yet completed the TN Management ATM Agreement. (Compl., Exh. F). One of Major Management's employees further advised that she would have to talk to her management to find out the status of the matter. (*Id.*) Thus, even viewing Plaintiffs' allegations and evidence the light most favorable to them, it is recommended that Plaintiffs have not alleged that a valid contract has been formed.

Despite the fact that Plaintiffs admit that Defendants never formally executed the Assignment of Assignments, Plaintiffs allege that this Court should hold that the parties are bound by it for three reasons. First, Plaintiffs allege that they and Defendants "began acting under the Lease Agreement and Supply Contract on October 1, 2012 . . . as if Defendants had executed the Assignment of Lease Agreement and Supply Contract from Assignors to Plaintiffs." (Compl. ¶ 21) Plaintiffs state that "Defendants' Law Department drafted all of the Agreement, which Plaintiffs and Assignors signed without change and returned to Defendants' Law Department." (*Id*). It is not entirely clear what theory Plaintiffs rely upon in this argument. However, Plaintiffs' own allegations and exhibits, even

when viewed in the light most favorable to Plaintiff, demonstrate that Defendants did not begin acting "as if" there were a valid contract. On the contrary, as already stated, Defendants repeatedly advised Plaintiffs that the contract negotiations were still in progress pending the completion of the TN Management ATM Agreement and that they were on "hold" until Plaintiffs agreed to this requirement.

Second, Plaintiffs allege that Defendants' representations and actions "constituted a novation from Defendants approving the replacement of the Assignors by the Plaintiffs to the Lease Agreement and the Supply Contract." (Compl. ¶ 26). Under Georgia law, a novation requires as follows:

> A novation or accord and satisfaction is in itself a contract that must have all the elements of a de novo contract. Therefore, there must be a meeting of the minds if the novation or accord and satisfaction is to be valid and binding. In every novation there are four essential requisites: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, [and] (4) the validity of the new one. If these essentials, or any one of them, are wanting, there can be no novation.

*Georgialina Enterprises, Inc. v. Frakes*, 551 S.E.2d 95, 98 (Ga. Ct. App. 2001) (citing *Griffiths v. Phenix Supply Co.*, 385 S.E.2d 789 (1989)) (citations and punctuation omitted). For the reasons already stated, it is recommended that there has been neither a "meeting of the minds" nor the formation of a valid contract regarding the assignment. Thus, it is recommended that Plaintiffs have not adequately plead that they and Defendants' representations and actions constitute a novation.

Third, Plaintiffs allege that Defendants, by their representations and actions, "waived any right they may have had to refuse the approval of the assignment from the Assignors to Plaintiffs of the Lease Agreement and the Supply Contract." (Compl. ¶ 30). Again, it is not clear how Plaintiffs contend that Defendants have waived any right to refuse the approval of the assignment.

11

Plaintiff's Complaint and exhibits allege that Defendants have expressly stated that they were not executing the Assignment of Assignments until Plaintiffs completed the TN Management ATM Agreement. Plaintiffs have never done so, and Defendants have never executed the assignment. Thus, it is recommended that Plaintiffs have not alleged that Defendants have waived any right to refuse to approve the assignment.

Ultimately, it is recommended that Plaintiffs have failed to allege that a valid contract existed between themselves, Assignors, and Defendants. Absent a valid contract, there is no valid forum selection clause governing the appropriate venue for the instant case. Thus, there is no reason to reach the question of whether a valid forum selection clause should be enforced under federal law, and it is recommended that Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) and the forum selection clause be DENIED.

### B. *Forum Non Conveniens*

Defendants have additionally requested that the instant case be dismissed under the doctrine of *forum non conveniens*. Under this doctrine, the Court should consider the inconvenience and desirability of the proposed forum versus the current forum in deciding the enforceability of the clause. *May*, 2010 WL 4024257, at *4. "The doctrine presupposes the availability of at least two forums in which the defendant may be sued; the defendant seeking a *forum non conveniens* dismissal must identify an alternative forum." *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984). "Once the existence of such a forum is established the trial court must consider the private interests of the litigants and factors of public interest in determining relative convenience of the forum chosen by the plaintiff as opposed to the available alternative forum." *Id.* "Among the important private interest considerations are 'the relative ease of access to sources of proof;

12

availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that may trial of a case easy, expeditious, and inexpensive." *Id.* (quoting *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947)). The court must also consider problems in enforcing a judgment if one is obtained and relative advantages and obstacles to a fair trial, if any. *Id.* The relevant public interest factors include administrative difficulties with courts with congested dockets; the burden of jury duty on people of a community having no connection with the litigation; desirability of holding a trial near those most affected by it; and, the appropriateness of holding a trial in a diversity case in a court which is familiar with governing law. *Id.* "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.*

Initially, with respect to the availability of at least two forums, Defendants have only proposed that the state courts of Gwinett County, Georgia are appropriate due to the forum selection clause, which this Court has recommended is not valid. Defendants do not provide any other legal basis for why the state courts of Gwinett County, Georgia are an available alternative forum. However, even assuming, *arguendo*, that Georgia state courts are an alternative forum, the public and private interest does not so strongly weigh in favor of Defendants to disturb Plaintiff's choice of forum.

With respect to the private factors, Defendants assert that their "business hub" is in Georgia and that Plaintiff Mohammed Z. Kutite is a resident of Desoto County, Mississippi. Plaintiff alleges that his residence is "just over the Tennessee/Mississippi boarder in Southaven" and that the Store is in Memphis, Tennessee. Plaintiff Mohammed Z. Kutite states that he works fifteen hours per day, seven days per week in Memphis, Tennessee and that all of his records are located there. Plaintiff

13

Mohammed Z. Kutite states that his company, Kutite, LLC, is a Tennessee limited liability company. Upon review, it is recommended that the balance of the private factors weigh in favor of this forum, as the business negotiations between Defendants and Plaintiffs' centered entirely upon the Store in Shelby County, Tennessee.

With respect to the public factors, Defendants assert that the Assignment of Assignments was to be governed by the laws of the State of Georgia and that Georgia state courts are best equipped to resolve this dispute. Plaintiff asserts that the applicability of Georgia law is dependent upon the assumption that "the assignment is found to be valid in the first instance." Plaintiff further asserts that the tort and usury claims are governed by Tennessee law. Upon review, it has been recommended that Plaintiff has failed to allege that a valid assignment exists. Thus, there is no choice of law provision that mandates that Georgia law govern any issues in this case. The remaining claims have been brought under Tennessee state law, which this Court is best equipped to consider. Thus, it is recommended that the balance of public factors weigh in favor of this forum. Accordingly, as no appropriate alternative forum is available and as both the private and public factors weigh in favor of this forum, it is recommended that Defendants' Motion to Dismiss on grounds of *forum non conveniens* be DENIED.

### C. Section 1406(a)

Finally, Defendants assert that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. Section 1406(a). Initially, Section 1406(a) does not govern dismissal but instead governs transfers of venue to cure defective venue. 28 U.S.C. § 1406(a). Section 1406(a) allows for transfers only to another federal "district or division in which it could have been brought." 28 U.S.C. § 1406(a). Defendants do not argue that there is another federal district or division in which

14

this case could have been brought or why dismissal is an available remedy under Section 1406(a). Accordingly, it is recommended that Defendants' Motion to Dismiss pursuant to Section 1406(a) be DENIED.[4]

IV. Conclusion

For the reasons set forth herein, it is recommended that Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), the *forum non conveniens* doctrine, and 28 U.S.C. Section 1404 be DENIED.

DATED this 20th day of August, 2013.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[4] Defendants have not argued that venue should be transferred in this case pursuant to 28 U.S.C. § 1404; however, Plaintiffs have addressed this argument in the event that the Court elected to *sua sponte* address this issue. It is recommended that Defendants have not sought relief pursuant to Section 1404 and that Section 1404 only applies to transfers to another federal "district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Defendants have not argued that any such federal district or division is appropriate for a transfer of venue.